Marcus Lesinsky, Appellant, *v.* Great Western Dispatch, Respondent.

### March 29, 1881.

1. Where a common carrier accepts goods directed to a point beyond the termination of its line, consigned to the care of a connecting carrier, and the latter refuses to receive the goods, the former does not discharge its duty by storing the goods, but must use reasonable diligence to notify the consignor or consignee of such interruption in the transit.

2. In an action for damages in such a case, it is competent for the owner to

show that six days after its refusal to receive the goods the intermediate carrier would have accepted and delivered the goods to the consignee, and that the defendant had notice of this.

3. An acceptance, by the owner, of goods short of their destination, and after they have been damaged in consequence of the carrier's negligence, is not a bar to an action for such damage.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Reversed and remanded.*

MYERS & ARNSTEIN, for the appellant : It was the duty of the defendant, either as common carrier or as forwarder, to give notice to the consignor or consignee of the non-delivery of the merchandise to the next carrier, and of the whereabouts of the merchandise. Its failure so to do subjected it to liability for the damages resulting therefrom. — *Louisville R. Co.* v. *Campbell,* 7 Heisk. 261 ; *Conkey* v. *Railway Co.,* 31 Wis. 619–637 ; *Williams* v. *Holland,* 22 How. Pr. 137 ; *Crouch* v. *Railway Co.,* 2 Hurl. & N. 419 ; *Convoy's Wheat,* 3 Wall. 225 ; *The Green* v. *Marshall,* 48 Ind. 596 ; *Salinger* v. *Simons,* 8 Abb. Pr. (N. S.) 409 ; *Rankin* v. *Railroad Co.,* 55 Mo. 172. As forwarder, it was incumbent on the defendant to deliver the goods to the next carrier as soon as that carrier was ready to receive the same ; and the court erred in not permitting plaintiff to show when said next carrier was so ready to receive said goods, and that the defendant knew delivery could be made. — *Railroad Co.* v. *Manufacturing Co.,* 16 Wall. 319 ; *Ingalls* v. *Brooks,* 1 Edm. Sel. Cas. 104 ; *Baltimore R. Co.* v. *Schumacher,* 29 Ind. 168 ; *Hadley* v. *Clark,* 8 Term Rep. 259 ; *Northrup* v. *Railroad Co.,* 5 Abb. Pr. 425 ; *Holtzclaw* v. *Duff,* 27 Mo. 392 ; *Coates* v. *Express Co.,* 45 Mo. 238 ; Story on Bail., sect. 444 ; *Steamboat* v. *Moies,* 28 Mo. 246. The mere fact of the refusal of the Iron Mountain Road to receive the goods, cannot exonerate the defendant, as common carrier, from liability for the failure to deliver and forward, if it could have been shown that when the defendant

received the goods for shipment, its officers and agents knew the Iron Mountain Road would not receive them ; and it was error to exclude evidence tending to show such knowledge on part of the defendant. — *McCarty* v. *Railroad Co.*, Mo. App. 1666 ; *Helen* v. *Wilson*, 4 Mo. 41 ; *Davis* v. *Smith*, 15 Mo. 467 ; Langd. Sel. Cas. on Con., 798, 803, 810 ; *Hand* v. *Baynes*, 4 Whart. 204 ; *Hadley* v. *Clark*, 8 Term Rep. 259 ; *Beebe* v. *Johnson*, 19 Wend. 500 ; *Shubrick* v. *Salmond*, 2 Burr. 1637. The court erred in instructing the jury that they must find for defendant, if they found that the defendant had tendered the goods to the Iron Mountain Road ; such tender was ineffectual unless accompanied with proper shipping instructions, and the question whether such shipping instructions had been given was one to be left to the jury. — *Northern R. Co.* v. *Railroad Co.*, 6 Allen, 256 ; *Little Miami R. Co.* v. *Washburn*, 22 Ohio St. 324 ; *Hempstead* v. *Railroad Co.*, 28 Barb. 485 ; Redf. on Car., sect. 186 ; *Michigan R. Co.* v. *Day*, 20 Ill. 375. The acceptance of goods from a carrier short of their destination will not absolve a carrier from liability for a breach of contract committed before such delivery. — *Atkinson* v. *Steamboat*, 28 Mo. 124 ; *Bowman* v. *Teall*, 23 Wend. 306.

E: W. PATTISON, for the respondent : The defendant is sued as a common carrier. It tendered the goods as per contract. They were refused. The defendant stored them. This ended its liability as a carrier. Being sued only as a carrier, it cannot be held.— Hutch. on Car., sect. 356 ; *Cramer* v. *Express Co.*, 56 Mo. 524 ; *Goold* v. *Chapin*, 10 Barb. 612. See also *Sweet* v. *Barney*, 23 N. Y. 335 ; *McDonald* v. *Railroad Co.*, 34 N. Y. 497 ; *Williams* v. *Holland*, 22 How. Pr. 137 ; *Robinson* v. *Batchelder*, 4 N. H. 40 ; *Baldwin* v. *Express Co.*, 23 Ill. 197 ; *Young* v. *Smith*, 3 Dana, 92 ; *Stone* v. *Waitt*, 31 Me. 409 ; *Hamilton* v. *Nickerson*, 11 Allen, 308 ; *Bartlett* v. *Steamboat*, 32 Mo. 256.

THOMPSON, J., delivered the opinion of the court.

This is an action against the defendant, an unincorporated association of railroad companies, operating connecting lines between New York and St. Louis, for damages resulting to the plaintiff by reason of the failure of the defendant to deliver to the next carrier for shipment beyond the defendant's route, merchandise belonging to the plaintiff.

The petition alleges that " the defendant was, at all the times mentioned, a common carrier; that on February 28, 1877, for value received, it agreed to carry from the city of New York to the city of St. Louis one case of merchandise, and at said city of St. Louis to deliver the same to the St. Louis, Iron Mountain, and Southern Railroad Company, and that the ultimate destination of said case was Pine Bluff, Arkansas, of which fact the defendant had full knowledge; that the defendant did transport said case to St. Louis, but that it failed to deliver it to the St. Louis, Iron Mountain, and Southern Railroad Company, as it had agreed to do; and failed to notify the plaintiff of its said failure to deliver said merchandise to said last-named road; and failed to inform the plaintiff of the whereabouts of said merchandise; and the plaintiff claims damages in the sum of $650, by reason of the negligence of the defendant in failing to deliver and to notify," etc. To this a general denial was filed.

The evidence tends to show that on February 28, 1877, Seidenbach, Schwab & Co. delivered to the defendant at New York City, a case of clothing for spring wear, of the value of $994, belonging to the plaintiff, marked " M. Lesinsky, Pine Bluff, Ark., care of St. L., I. M. R. R." for which the defendant gave a bill of lading reciting the marks on the goods, and stating that they were to be forwarded to St. Louis at a rate named; that the goods arrived at St. Louis on March 13, 1877, and were tendered by the St. Louis Transfer Company, one of the connecting companies of the defendant's line, to the St. Louis and Iron Mountain Railroad, which road refused to

receive them, because at that season of the year the Arkansas River, the route by which freight is carried between Little Rock and Pine Bluff, was low, and freight could not readily be forwarded from Little Rock to Pine Bluff; and, therefore, a rule had been adopted by the Iron Mountain Road which required that merchandise destined for Pine Bluff should be marked in care of some forwarding company at Little Rock, as the Iron Mountain Road only extended to Little Rock, and not to Pine Bluff; that upon the refusal of the Iron Mountain Road to receive the goods, they were stored by the said St. Louis Transfer Company, one of the defendant's connecting lines, in its warehouse at St. Louis, where they remained until January, 1880, almost three years, when, on an order from the agent of the defendant, they were, at the plaintiff's request, delivered at St. Louis to a firm for his benefit. The goods were appraised and found damaged in the sum of $429.50. The general agent of the defendant, Mr. Wheelock, testified that about six weeks after the goods had been shipped, consignors informed him that the goods had not yet reached their destination, and he promised to send out tracers for them ; that he did not, however, inform the consignors of the whereabouts of the goods until May 16, 1877, which was nearly three months after the goods had been shipped, and six weeks after their non-arrival had been reported to him. The consignee refused to receive the goods then, because the season for their sale had passed, and they had greatly declined in value. The testimony of the plaintiff is, that, had the goods been delivered to him in season they would have been worth forty per cent more to him than the invoice price ; that at one time he was informed that the goods were somewhere in Texas.

The plaintiff undertook to show that neither he nor the consignors had any knowledge of the existence of the rule under which the Iron Mountain Road declined to receive the goods ; that the defendant, its officers and agents, when it

received the goods, knew of the existence of this rule, and contracted with respect to it; that no notice was given the plaintiff or the consignors, by the defendant or anyone else, of the refusal of the Iron Mountain Road to receive the goods; that the rule under which the Iron Mountain Road refused to receive the goods was revoked six days after the goods arrived in St. Louis; that the defendant knew of such revocation; that after such revocation the Iron Mountain Road would have received the plaintiff's goods and carried them to their destination, had they been tendered; and that the defendant did not offer to deliver said goods to the Iron Mountain Road at any time after said rule was revoked. All of which evidence was excluded by the court against the plaintiff's objection. Thereupon the court instructed the jury that if they found that the defendant tendered the goods to the Iron Mountain Road when they arrived in St. Louis, they should find for the defendant; whereupon the plaintiff took a non-suit with leave, and in due time moved to set aside the non-suit, and for a new trial, which motions were overruled. The case is here by appeal.

· It seems to us that this is one of those cases where it is only necessary to state the facts in order to decide the case. By accepting the plaintiff's goods, directed to a point beyond the termination of its own line, and consigned to the care of a carrier whose line connected with its line, the defendant assumed the duty of delivering them to such connecting carrier. *Rawson* v. *Holland*, 59 N. Y. 611. Delivery to the connecting carrier in this case being impossible by reason of the fact that such carrier refused to receive the goods, did the defendant incur liability to the plaintiff for failing to give notice of that fact?

It is familiar law that the liability of a carrier does not cease till he has delivered the goods to the consignee, or made a reasonable attempt to deliver them.

Where his own route extends to the place of ultimate destination of the goods, and the consignee refuses to re-

ceive the goods, he ordinarily discharges himself from liability by storing the goods safely without giving notice to the consignor, although there are some cases which hold that such notice must be given. The reason why such notice is not ordinarily required seems to be that the consignee is presumptively the owner of the goods, the consignor the agent of the owner for the purpose of shipment, and the carrier, in like manner, the agent of the owner. Hutch. on Car., sect. 108; *Briggs* v. *Railroad Co.*, 6 Allen, 246. It is, therefore, a case where an agent tenders performance of his contract to his principal and the latter refuses, in which case there seems to be no good reason why the agent should be held bound to notify a third person of that fact. But the reason of this rule does not apply to the case where the carrier undertakes to transport goods over his own line and deliver them to a connecting carrier to complete the transit. Here, the goods having passed wholly out of sight of both the consignor and the consignee, if, from any circumstance, delivery to the succeeding carrier becomes impossible, the former carrier is under an obvious duty to notify either the consignor or the consignee, unless it is impracticable to do so. Where notice may be readily sent by letter or by telegram, he is, on principle, guilty of a clear breach of duty if he neglects to send it, and there are cases which so hold. *Convoy's Wheat*, 3 Wall. 225; *Railroad Co.* v. *Campbell*, 7 Heisk. 253, 261.

In all of these cases the carrier is bound to do what, under the circumstances, is reasonable. *Hudson* v. *Baxendale*, 2 Hurl. & N. 575. Where, as in this case, the goods have passed out of the hands and out of the sight both of the consignor and the consignee, and are interrupted in their transit by a circumstance unknown to either, but known to the carrier, it cannot for a moment be argued that the carrier does what is reasonable by housing the goods, giving notice to no one, and losing all knowledge of

them himself. No more convincing argument against such a conclusion could be suggested than the circumstances of this case. Here were goods of the value of several hundred dollars, interrupted in their transit at a point remote from both consignor and consignee. A postal card, costing a cent, and a few scratches of a pen by a clerk, would have notified either of this fact. For nearly three months a knowledge of their whereabouts was completely lost to the consignor, the consignee, and the defendant. In the meantime the season during which they were salable had passed, and they were, for this reason, greatly depreciated in value. This seems to make out a clear case for the recovery of damages. But if, in addition to this, the circumstance which obstructed the goods in their transit existed for six days only after they arrived at the end of its line, and the defendant knew of the fact of the obstruction being removed, then the failure of duty on its part is still more clear.

We see no merit in the defendant's contention that by his act of receiving the goods short of their destination, the plaintiff has precluded himself from recovery in this suit. We regard the case as governed in all respects by the doctrine announced by the Supreme Court in *Atkisson* v. *Steamboat*, 28 Mo. 125, that "if goods are shipped on a voyage, and the owner agrees to receive them at a place short of the point of destination, that will not free the carrier from responsibility of damage incurred by a breach of the contract of affreightment made by him before the delivery of the goods at the intermediate place;" the principle being that "an acceptance of the goods by the owner, after they have received damage in consequence of the carrier's negligence, is no bar to an action for such damage." Ang. on Car., sect. 338; *Bowman* v. *Teall*, 23 Wend. 308. That is just this case, for there can be no distinction upon principle between damage to the actual fabric of the goods

from the carrier's negligence, and damage to their salability from a loss of the goods and delay from the same cause.

We, therefore, hold that the court erred in refusing to permit the plaintiff to prove that when the Iron Mountain Railroad declined to receive the goods no notice of that fact was sent by the defendant, or anyone else, either to the consignor or the consignee. We also hold that the court erred in refusing to permit the plaintiff to prove that the rule under which the Iron Mountain Railroad refused to receive the goods was revoked six days after the goods arrived in St. Louis ; that the defendant knew of such revocation ; that after such revocation the Iron Mountain Railroad would have received the goods and carried them to their destination if they had been again tendered, and that the defendant did not again offer to deliver them to the Iron Mountain Railroad at any time after the rule was revoked. We also hold that the court erred in instructing the jury that if they should find that the defendant tendered the goods to the Iron Mountain Railroad when they arrived in St. Louis, they should find for the defendant. On the other hand, the plaintiff should have been permitted to introduce the evidence which the court excluded, as just stated ; and upon this evidence, if introduced, the jury should have been directed, as matter of law, that the defendant was bound to notify either the consignor or the consignee of the refusal of the Iron Mountain Railroad to receive the goods. They should also be directed to say whether the defendant acted reasonably under the circumstances, in failing again to tender the goods to the Iron Mountain Railroad as soon as it had knowledge that the rule under which that road had refused to receive the goods had been revoked ; and that if, in this particular, they should find that it acted unreasonably or negligently, the plaintiff would be entitled to damages.

The judgment is reversed and the cause remanded, Judge BAKEWELL concurring ; Judge LEWIS not sitting.